UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TANGEE MARIE VAN, | ) | CASE NO. 4:10CV2109 |
| o/b/o D.B.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | **MEMORANDUM OPINION & ORDER** |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Tangee Marie Van ("Plaintiff"), acting on behalf of her son, D.B., a minor, ("Claimant") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), finding that Claimant was no longer entitled to Supplemental Security Income ("SSI"). ECF Dkt. #1. Plaintiff asserts that the Administrate Law Judge ("ALJ") erred in: (1) concluding that Claimant's condition did not meet the standard for functional equivalence; and (2) failing to grant appropriate weight to the opinions of Claimant's treating physicians. ECF Dkt. #14 at 1. For the following reasons, the Court AFFIRMS the ALJ's decision:

## I.    PROCEDURAL AND FACTUAL HISTORY

On November 15, 2004, Plaintiff filed an application for SSI on behalf of Claimant, alleging disability since Claimant's birth on April 2, 1998 due to anemia, hyperactivity, muscle problems, deafness, speech problems and separation anxiety. Tr. at 60, 67-70. Her application was denied initially and on reconsideration. *Id*. at 56-62. Plaintiff requested a hearing by an ALJ. *Id*. at 52.

---

[1]  In accordance with this Court's Local Rule 8.1(a)(2), the caption of this case shall reflect the above Plaintiff's name as cited above, and shall not identify the minor child's name as reflected on the docket of this case and in the filings.

On October 18, 2007, an ALJ conducted an administrative hearing, where Plaintiff and Claimant appeared with counsel, and the ALJ received testimony from Plaintiff, Claimant, and a medical expert ("ME").  Tr. at 477.

On November 30, 2007, the ALJ issued a decision finding that Claimant was disabled from November 15, 2004 through December 31, 2005 due to the severe impairments of left ear hearing loss, separation anxiety disorder, oppositional defiant disorder, and a speech delay, which functionally equaled the Listing of Impairments in 20 C.F.R. §§ 416.924, 416.925, and 416.926. Tr. at 35.  However, the ALJ found that Claimant was not disabled from his impairments after December 31, 2005.  *Id*. at 37.

Plaintiff, through counsel, filed a request for review of the ALJ's decision, and on April 14, 2009, the Appeals Council affirmed the ALJ's finding that Claimant was disabled from November 15, 2004 through December 31, 2005, but vacated the decision with regard to the issue of Claimant's disability after December 31, 2005.  Tr. at 463-467. The Appeals Council remanded the case for resolution of issues after December 31, 2005 because insufficient evidence existed concerning Claimant's psychological impairments after that date and the ALJ failed to evaluate Claimant's Attention Deficit Hyperactivity Disorder ("ADHD") under Listing 112.11  of the Listing of Impairments even though he found this impairment severe.  *Id.* at 463.  The Appeals Council ordered the ALJ to do the following upon remand:  obtain additional evidence of Claimant's psychological impairments after December 31, 2005, including a consultative examination and medical source statements about Claimant's abilities; further evaluate Claimant's impairments with regard to 20 C.F.R. § 416.926a; evaluate the issue of disability cessation pursuant to 20 C.F.R. § 416.994; and obtain ME testimony, if necessary to clarify the nature and severity of Claimant's impairments.  *Id*. at 463-464.

On February 18, 2010, a different ALJ held a hearing pursuant to the remand order, with Claimant and Plaintiff appearing and represented by counsel.  Tr. at 508.  Claimant and Plaintiff both testified.  *Id*.

On March 24, 2010, the ALJ issued a decision finding that Plaintiff's disability ended on December 31, 2005 and he had not become disabled again since that date  Tr. at 27.  Plaintiff filed a request for review of the ALJ's decision, but on July 20, 2010, the Appeals Council denied the request for review.  *Id.* at 5-9.

On September 21, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  On August 30, 2011, Plaintiff filed a brief on the merits.  ECF Dkt. #14. On November 14, 2011, Defendant filed a brief on the merits.  ECF Dkt. #17.  Plaintiff filed no reply. On January 12, 2012, the instant case was transferred to the undersigned's docket after the parties consented to the undersigned's jurisdiction.  ECF Dkt. #19.

II.    **LAW APPLICABLE TO CHILD SSI BENEFITS**

Under the Social Security Act, a child is deemed disabled if he:

> has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(i).  The regulations prescribe a separate three-step sequential evaluation process for reaching this determination. *See* 20 C.F .R. § 416.924(a). At Step One, a child will be found "not disabled" if he is engaging in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). At Step Two, a child will be found "not disabled" if he does not have an impairment or combination of impairments that is severe, *i.e.*, he has a medically determinable impairment that causes no more than minimal functional limitations. *See* 20 C.F.R. § 416.924(c). At Step Three, a child will be found "not disabled" if he has an impairment or combination of impairments but it does not meet, medically equal, or functionally equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. § 416.924(d).

In order to *meet* a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the listing for that particular impairment.  20 C.F.R. § 416.925 (d)(emphasis added).  In order to *medically equal* a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described

in the listing for that particular impairment.  20 C.F.R. § 416.926(a)(emphasis added).

In order to *functionally equal* a Listing, the child's impairment(s) must be of listing-level severity; *i.e.*, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a)(emphasis added).  The SSA assesses all relevant factors, including (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment. 20 C.F.R. § 416.926a(a)(1)- (3). Further, in determining functional equivalence, the SSA considers how a child functions in his activities within six domains:

> (i) Acquiring and using information;
>
> (ii) Attending and completing tasks;
>
> (iii) Interacting and relating with others;
>
> (iv) Moving about and manipulating objects;
>
> (v) Caring for yourself; and,
>
> (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).  The Agency defines "marked" and "extreme" limitations as follows:

> (2) Marked limitation.
>
>> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
>
> (3) Extreme limitation.
>
>> (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst

-4-

> limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. §§ 416.926a(e)(2)(i), (e)(3)(i).

Moreover, the SSA must periodically review whether a disabled child continues to remain eligible for benefits. 42 U.S.C. §1382c(a)(3)(H)(ii)(I); 20 C.F.R. § 416.994a. The SSA follows a three-step process in reviewing continued eligibility for Social Security Benefits. In step one, the SSA determines whether there has been any "medical improvement" in the impairments that the child had at the most recent favorable determination that he was disabled *(i.e.*, the comparison point decision or "CPD"). 20 C.F.R. § 416.994a(b). Medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable decision that [the claimant] was disabled or continued to be disabled ... based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 416.994a(c). If no medical improvement has occurred, the child continues to be disabled unless an enumerated exception applies. 20 C.F.R. § 416.994a(b)(1). If medical improvement has occurred, the SSA proceeds to step two. 20 C.F.R. § 416.994a(b)(2).

At step two, if the CPD was made on or after January 2, 2001 and was based upon functional equivalence to a Listing, as is the case here, the SSA need only determine whether the impairment(s) now functionally equals the Listings. 20 C.F.R. § 916.994a(b)(2); Social Security Ruling ("SSR") 05-03p, 2005 WL 1041037. If the impairment does still functionally equal a Listing, then disability benefits will continue. *Id*. If the impairment does not, the SSA will proceed to step three. *Id.*

At step three, the SSA must determine whether the child is currently disabled in accordance with the rules for determining disability for children. 20 C.F.R. § 416.994a(b)(3). In determining whether a child is currently disabled, the SSA will consider all of the impairments that the child now has, including those not had at the time of the CPD, or those that the SSA did not consider at that time. *Id*. The steps in determining current disability are summarized as follows:

> (i) Do you have a severe impairment or combination of impairments? If there has been medical improvement in your impairment(s), or if one of the first group of exceptions applies, we will determine whether your current impairment(s) is severe, as defined in § 416.924(c). If your impairment(s) is not severe, we will find that your

disability has ended. If your impairment(s) is severe, we will then consider whether it meets or medically equals the severity of a listed impairment.

(ii) Does your impairment(s) meet or medically equal the severity of any impairment listed in appendix 1 of subpart P of part 404 of this chapter? If your current impairment(s) meets or medically equals the severity of any listed impairment, as described in §§ 416.925 and 416.926, we will find that your disability continues. If not, we will consider whether it functionally equals the listings.

(iii) Does your impairment(s) functionally equal the listings? If your current impairment(s) functionally equals the listings, as described in § 416.926a, we will find that your disability continues. If not, we will find that your disability has ended.

*Id.*

## III. **RELEVANT PORTIONS OF THE ALJS' DECISIONS**

In the November 2007 ALJ decision, the ALJ found that Claimant had not engaged in substantial gainful activity and he had the severe impairments of left ear hearing loss, separation anxiety disorder, oppositional defiant disorder, and a speech delay.  Tr. at 35.  He found that Claimant had these severe impairments from November 15, 2004 through December 31, 2005 and these impairments during that time, individually and/or in combination, functionally equaled the Listings.  *Id.*  He reviewed the six domains of functional equivalence and found that Claimant's impairments caused marked limitations in the domains of acquiring and using information and in caring for his personal needs.  *Id.*  However, for the time period following December 31, 2005, the ALJ found that Claimant did not have an impairments or combination of impairments that met, medically equaled, or functionally equaled any of the Listings.  Tr. at 37-40.  He therefore found that as of January 1, 2006, Claimant was not disabled.  *Id.* at 40.

Upon remand, another ALJ held a hearing and issued a decision addressing the remand order.  Tr. at 13.  The ALJ noted that the Appeals Council had affirmed the prior ALJ's determination that Claimant was disabled from November 15, 2004 through December 31, 2005 and thus the issue was whether Claimant's disability had ended as of December 31, 2005 and whether Claimant again became disabled after that time.  *Id.*

The ALJ found that the most recent favorable medical decision finding Claimant disabled was the November 30, 2007 ALJ decision, which was the CPD.  Tr. at 17.  He found that at the time of the CPD Claimant had the medically determinable impairments of hearing loss, separation anxiety

disorder, opposition defiant disorder, ADHD, and speech delay, which were found to functionally equal the Listings. *Id*. The ALJ further found that the medical evidence showed that medical improvement had occurred as of December 31, 2005. *Id*. He further found that since December 31, 2005, Claimant's impairments did not functionally equal the Listings. *Id*. at 18. The ALJ addressed the six domains of functioning individually and found that since December 31, 2005, Claimant had no limitations in: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; and in health and physical well-being; and he had less than marked limitations in the ability to care for himself. *Id.* at 20-25.

The ALJ also found that Claimant did not have an impairment at the CPD that was not considered at that time and he had not developed any additional impairment subsequent to the CPD. Tr. at 25. He found that since December 31, 2005, Claimant had not had an impairment or combination of impairments that met, medically equaled, or functionally equaled the Listings. *Id*. at 26. He therefore concluded that Claimant's disability ended as of December 31, 2005 and he had not become disabled since that date. *Id*. at 27.

## IV.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human*

*Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.    ANALYSIS

Plaintiff contends that the ALJ erred in finding that Claimant's conditions did not functionally equal the Listings as of January 1, 2006.  ECF Dkt. #14 at 6-9.  She notes that the prior ALJ found Claimant markedly impaired in acquiring and using information and caring for himself and the Appeals Council remanded Claimant's case to address his ADHD and its impact on Claimant's functioning.  *Id*. at 7.  Plaintiff asserts that the instant ALJ's finding that Claimant had less than marked limitation in caring for himself since January 1, 2006 and no limitation in the remaining five domains is "clearly contrary to the weight of the evidence."  *Id*.  Plaintiff cites to medical evidence in the record showing Claimant's ongoing problems with fidgeting, hyperactivity and sleep disturbance, as well as hearing loss and depressed mood.  *Id*. at 7, citing Tr. at 318, 319, 320, 369, 415, 418.  Plaintiff contends that this evidence, in addition to the findings of Claimant's treating psychiatrist Dr. Fikter, and his treating counselor, Meg Harris, support a finding that Claimant is markedly limited in at least the three domains of acquiring and using information, attending and completing tasks, and in caring for himself.  *Id*. at 8.  Plaintiff additionally asserts that the ALJ failed to properly analyze the opinions of Claimant's treating sources and failed to properly articulate his reasons for rejecting those opinions.  *Id*. at 10-12.

### A.    TREATING SOURCE RULE

Dr. Fikter was Claimant's treating psychiatrist at D&E Counseling Center.  Tr. at 342-345. He completed an "Areas of Functioning" form on September 24, 2007 and indicated that he had treated Claimant for the last year.  *Id*. at 344.  The form identified five areas of functioning and listed five choices of the degree of functioning in each area from which Dr. Fikter could choose.  *Id*. at 342-344.  The five areas of functioning were identified as "Cognitive function/communicative function,", "Motor function," "Social function," "Personal function," and "Concentration, Persistence, or Pace" and contained a description after each area.  *Id.* at 343-344.  The degrees of functioning were identified as "not assessed," "slight limitation," "moderate limitation," "marked limitation" or "extreme limitation" and the form provided a definition of each of the degrees from which Dr. Fikter could choose.  *Id*. at 342.  The form requested that Dr. Fikter check the appropriate

degree of limitation that he opined for Claimant for each area and requested that he provide a "description" of the limitation after each area.  *Id*.

In the area of cognitive/communicative function, Dr. Fikter checked "marked" limitation and wrote "distractability" as his description for the assessment.  Tr. at 342.  Dr. Fikter checked "not assessed" for the area of motor functioning, checked "moderate" limitation for the area of social functioning, and he wrote "defiant" in the description section of this area of functioning.  *Id*. at 343.  In the area of personal function, Dr. Fitker checked "moderate" limitation and provided no description, and in the area of concentration, persistence and pace, Dr. Fitker checked "marked" limitations and wrote "distractable" in the description.  *Id*. at 344.

Meg Harris, Claimant's counselor at D&E Counseling Center, also completed the "Areas of Functioning" form on September 24, 2007 and indicated that she had treated Claimant for the last year.  Tr. at 348.  At the bottom of the first page of the assessment, Ms. Harris handwrote:

> Please note that this information is based on information provided by report of parents.  Attendance rate in therapy from 9-11-06 to present is 7/17 appts.

*Id*. at 346.  In the area of cognitive/communicative function, Ms. Harris checked "marked" limitation and wrote the following description for her assessment:

> DeAndrew reportedly struggles with cognitive skills in school and in problem solving abilities at home and school.  Conversationally DeAndrew is interactive, meets his needs by saying thing that have meaning to others but seems delayed in conceptualization of thought.

*Id*.  Ms. Harris checked "not assessed" for motor function, indicating that this area was not known from the mental health assessment.  *Id*. at 347.  As to the area of social function, Ms. Harris checked "moderate" limitation and indicated that:

> Socially DeAndrew appears to relate more w/adults than peers.  He doesn't spend a lot of time per report doing things other than video games w/parents.

*Id*.  As to personal function, Ms. Harris checked "slight" limitation and wrote that "DeAndrew is always well kempt when at appointments."  *Id*.  In the area of concentration, persistence and pace, Ms. Harris checked "marked" limitations and wrote "currently on meds for ADHD due to impairment in concentration" in the description.  *Id*. at 348.

Before specifically addressing each domain of functioning in his decision, the ALJ cited to the assessments of Dr. Fitker, and Ms. Harris.  Tr. at 19.  He noted that they provided opinion evidence that was consistent with the reports of Plaintiff about Claimant's behavior.  *Id*.  The ALJ acknowledged that Dr. Fitker was a treating specialist and Ms. Harris a treating counselor and he therefore "carefully considered" their opinions.  *Id*.  However, he rejected these opinions, finding that the treatment notes were inconsistent with the limitations found and were based mainly on parent reports because Claimant's attendance at therapy was extremely poor, as he only attended seven of seventeen scheduled sessions.  *Id*.  He also pointed out that parental reports were inconsistent over time and were inconsistent with mental status examinations conducted by the treatment team.  *Id*. at 20.

An ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544.  A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).  Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled

-10-

and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."  *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician...submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Comm'r of Soc. Sec.*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1).  "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id.* (internal quotation and citation omitted).  Moreover, it is the ALJ who ultimately determines a claimant's RFC.  *See* 20 C.F.R. 404.1546(c), 416.946(c) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician").

The Court finds that the ALJ in the instant case provided sufficient articulation of his reasons for rejecting the opinions of Dr. Fikter and Ms. Harris.  He noted the inconsistencies between the findings of marked limitations with their own treatment notes and mental status evaluations.  Tr. at 19-20.  He also noted that Claimant missed many more counseling sessions than he attended and he was discharged from treatment as a result.  *Id.*  The ALJ also cited the inconsistencies between Plaintiff's reports of Claimant's behaviors with other reports that she made and with Claimant's own testimony and his school reports.  *Id.*  While Plaintiff correctly points out that it is reasonable for a treating source to rely upon parental reports and observations, an ALJ can nevertheless reject a treating source's opinion that is inconsistent with other substantial evidence in the case record.  Here, as explained more fully below, the opinions of Dr. Fikter and Ms. Harris were inconsistent with the other substantial evidence of record, including their own treatment notes.

-11-

For instance, while Dr. Fikter and Ms. Harris found that Claimant was markedly limited in acquiring and using information, Ms. Harris' treatment notes reflect that she administered testing on October 4, 2006 to determine Claimant's cognitive impairment and she found that he engaged in the tasks well, his concentration was good and his interaction was age-appropriate.   Tr. at 366. She noted "no symptoms of unusual or bizarre cognitions" and "no significant impairment in function."  *Id.*  Moreover, most of the treatment notes from Dr. Fitker and Ms. Harris indicate no abnormal symptoms or ranges of affect from Claimant and they note that he was primarily quiet and cooperative.  *Id*. at 357-359, 361-366.

Further, both Dr. Fikter and Ms. Harris noted the inconsistent reporting of Claimant's symptoms and behavior  by Plaintiff. On April 11, 2007, Ms. Harris noted that Plaintiff provided information that did not make sense regarding Claimant's overall functioning.  Tr. at 363.  Plaintiff had reported that Claimant had earned a scholarship to Stanford University for next year even though he was still in grade school but she had simultaneously reported that Claimant was hyper and impulsive and his medications were not working.  *Id*. at 315, 363.  Plaintiff had reported the same to Dr. Fikter and he questioned the statement in his notes and also noted the inconsistency of Plaintiff's statement with her nearly simultaneous statement that Claimant was hyper and impulsive and that the medications were not helping.  *Id*.  at 315.  On April 18, 2007, Plaintiff reported to Ms. Harris that Claimant did not get a scholarship to Stanford University, but he had tested at the tenth grade level even though he was the age of nine.  *Id.* at 362.  Ms. Harris also noted that on September 12, 2007, she asked Plaintiff about Claimant's "long absence" from treatment.  *Id.* at 360.  Ms. Harris further noted that "mom gives multiple varying opinions as to why they are inconsistent" with Claimant's treatment and she noted that Plaintiff would not allow Claimant to answer questions. *Id*.  Ms. Harris further indicated that her plan was to see Claimant alone at the next appointment because "mom does not allow" him to talk when she is in the room. *Id*.  Ms. Harris noted on September 26, 2007 that she needed to "discuss situation with Dr. Fitker of mixed messages with symptoms." *Id.* at 359.

Moreover, as noted by the ALJ, on November 27, 2007, D&E Counseling Center terminated services for Claimant due to "chronic failure to attend therapy and inconsistent reports given to med

-12-

somatic services resulting in termination." Tr. at 355. Ms. Harris noted that Claimant's "progress was noted inconsistently- sometimes parent reported 'no symptoms' and other times parent reported 'psychotic-like symptoms' of hearing voices and interacting with invisible people." *Id.* She noted that Claimant's parents would report that Claimant was "out of control" and "not listening," but then they would not show for appointments and would not follow Dr. Fikter's recommendations. *Id.*

Based upon the fact that most of the reported symptoms for counseling by Dr. Fikter and Ms. Harris were reported by Claimant's parents, who provided inconsistent statements about Claimant's behavior and symptoms, as well as treatment notes and evaluations that were not supportive of the marked limitations opined by Dr. Fikter and Ms. Harris, the Court finds that the ALJ properly followed the treating physician rule and substantial evidence supported his decision to reject the assessments of Dr. Fitker and Ms. Harris.

Upon his rejection of these opinions, the ALJ reasonably explained that he gave the most weight to the opinions of agency consulting examiner Dr. Chiarella, who interviewed Claimant on June 2, 2009 and diagnosed him with separation anxiety disorder, in partial remission, ADHD, combined type, in partial remission, and learning disorder not otherwise specified. Tr. at 354. Dr. Chiarella concluded with reasonable psychological certainty that Claimant's cognitive skills were within normal parameters and therefore age-appropriate, his communication, gross and fine motor skills and social functioning were age-appropriate, he had 100% intelligible speech, and he was capable of developing friendships and relating appropriately to peers and adults. *Id.* Dr. Chiarella reported Plaintiff's statement that Claimant's personal hygiene was poor, but he noted that Claimant presented a positive physical appearance in appropriate attire and he was responsive and engaged. *Id.* at 353.

### B.    **DOMAINS OF FUNCTIONING**

Plaintiff also asserts that the ALJ erred in finding that Claimant's impairments no longer functionally equaled a Listing after December 31, 2005. The Court addresses each domain.

### 1.    **Acquiring and Using Information**

In this domain, Dr. Fikter and Ms. Harris both opined that Claimant experienced marked limitations. Tr. at 342, 346. However, Dr. Fikter only wrote "distractabilty" as his description for

-13-

this marked limitation and Ms. Harris indicated that Claimant "reportedly struggles with cognitive skills in school and in problem solving abilities at home and school." *Id*.  Further, Ms. Harris indicated that her assessment "is based on information provided by report of parents.  Attendance rate in therapy from 9-11-06 to present is 7/17 appts." *Id*. at 346.  Thus, both her assessment and that of Dr. Fikter is primarily based upon the reports of Plaintiff, which were found inconsistent by the ALJ and by both Dr. Fikter and Ms. Harris.  *Id*. at 18-20, citing Tr. at 356-368.  In addition, it appears that Ms. Harris conducted testing on October 4, 2006 to determine Claimant's cognitive impairment and she found that he engaged in the tasks well, his concentration was good and his interaction was age-appropriate.   Tr. at 366.  She noted "no symptoms of unusual or bizarre cognitions" and "no significant impairment in function." *Id*.  Moreover, most of the treatment notes from Dr. Fitker and Ms. Harris indicate no abnormal symptoms or ranges of affect from Claimant and they note that he was primarily quiet and cooperative. *Id*. at 357-359, 361-366.

The ALJ found that while Claimant testified that he had some difficulty with reading and social studies class, Claimant indicated that he was good at math and his grades were good overall. Tr. at 21.  Treatment notes show that Claimant earned As and Bs over the school years and that while his grades did fall for a period of time, they improved significantly and counselors found his cognition and intelligence were normal and his speech was now one hundred percent intelligible. *Id*. at 285, 319-321, 346, 373, 380-385, 391, 393, 394, 402.  Dr. Chiarella found with reasonable psychological certainty that Claimant's cognitive skills were within normal parameters and age appropriate. *Id*. at 354.  This evidence constitutes substantial evidence to support the ALJ's determination that Claimant had no limitation in using and acquiring information as of January 1, 2006.

## 2.        Attending and Completing Tasks

Substantial evidence also supports the ALJ's determination that Claimant had no limitations in this domain as of January 1, 2006. Tr. at 21-22. The ALJ reasonably relied upon the opinion of Dr. Chiarella who diagnosed Claimant with ADHD, Combined Type, but found that it was in partial remission and otherwise found that Claimant was able to concentrate and sustain activity in an age-appropriate manner during his interview and evaluation. *Id*. at 354.  Moreover, Ms. Harris had

-14-

indicated that when she conducted cognitive testing on Claimant in 2006, she found that his concentration was good and his interaction was age-appropriate. *Id.* at 366. Ms. Harris also noted in December 2006 that Claimant's behavior at school was "respectful, compliant and on task." *Id.* at 364. Claimant himself testified to the ALJ that he completes his homework and only had trouble focusing in social studies because he sat in the back of the class and the teacher used big words that he would try to figure out while the teacher would continue talking. *Id.* at 514-515. The Court notes that Claimant lost hearing in his left ear and was told to sit in the front of the class. *Id.* at 532. Plaintiff testified at the hearing that she did not know that Claimant was sitting in the back of the social studies class and needed to sit in the front. *Id.*

### 3. <u>Interacting and Relating to Others</u>

Substantial evidence also supports the ALJ's finding that Claimant had no limitation in this domain. Tr. at 22. Plaintiff asserts in her brief on the merits that Claimant's hearing loss and oppositional defiant disorder present additional limitations in this domain, raising the degree of limitation to marked. The Court finds no merit to this assertion. The ALJ noted that while Plaintiff reported that Claimant had gotten into fights, Claimant testified that he played on a football team and got along with teammates, he had a best friend, and mental status examinations indicated that he was cooperative and had same-aged friends and he had no disciplinary actions at school for bad behavior such as fighting. *Id.* at 22-23; *see also* Tr. at 237, 315-321, 385, 394, 516, 518, 520. Dr. Chiarella also opined that Claimant had age appropriate communication skills and was capable of developing friendships and relating appropriately to peers and adults, with age appropriate social functioning. *Id.* at 354. This constitutes substantial evidence to support the ALJ's finding.

### 4. <u>Moving about and Manipulating Objects</u>

In this domain, the ALJ also properly found that Claimant had no limitation. Tr. at 23. The ALJ noted that no evidence of this limitation existed in the record and none was alleged. *Id.* Claimant makes no allegation concerning this domain and substantial evidence supports the ALJ's finding.

### 5. <u>Caring for Self</u>

Plaintiff raises an issue with regard to the ALJ's finding that Claimant had less than marked limitations in the domain of the ability to care for himself. ECF Dkt. #14 at 8-9. Plaintiff contends that the ALJ erred in relying upon Dr. Chiarella's assessment as to this domain and should have relied upon the findings of Dr. Fitker and Ms. Harris. *Id*. at 9. She also asserts that the evidence demonstrated that Claimant often appeared at counseling in a depressed mood and he complained of hearing voices. *Id.* As explained above, the ALJ properly articulated his reasons for rejecting the assessments of Dr. Fitker and Ms. Harris. Moreover, while there were instances where Claimant appeared at counseling in a depressed mood and complained of hearing voices at times, this does not rise to the level of showing a marked limitation in this area. Numerous treatment notes also showed that Claimant was pleasant, cooperative and no longer hearing voices. *See* Tr. at 262, 289, 291-292, 315, 353. At his assessment with Dr. Chiarella, Claimant denied being sad or depressed and reported in a vague manner about hearing voices and only stated that "sometimes they will tell me to go to bed." *Id*. at 353. Claimant denied any command hallucinations and Dr. Chiarella nevertheless found that he was able to care for his personal needs. *Id*. at 353-354. Moreover, the ALJ noted the numerous reports by mental health providers that Claimant appeared at his sessions well-groomed and the treatment team discounted the impact and severity of the report that Claimant was hearing voices, indicating that they were mild and not command hallucinations. *Id*. at 24, citing Tr. at 378-445. This evidence constitutes substantial evidence to support the ALJ's finding in this domain.

### 6. <u>Health and Physical Well-Being</u>

Substantial evidence also supports the ALJ's determination that Claimant had no limitation in this domain. Tr. at 25. The ALJ found that no evidence existed of a limitation in this domain and Plaintiff alleged no limitation. *Id*. A review of the record shows no limitation in this domain and Plaintiff makes no such assertion in his brief.

For these reasons, the Court finds that the ALJ properly articulated his reasons for rejecting the reports of Claimant's treating sources and reasonably relied upon the findings and opinions of

Dr. Chiarella, the examining consultant.  Moreover, substantial evidence supports the ALJ's determination that Claimant did not have marked or extreme limitations in any of the six domains in order to functionally equal a Listing after December 31, 2005 or that he had any additional impairments that caused such limitations individually or in combination with ADHD.

**VI.**    **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint filed on behalf of Claimant in its entirety WITH PREJUDICE.

IT IS SO ORDERED.

DATE: May 16, 2012                       ___*/s/George J. Limbert*_____
                                         GEORGE J. LIMBERT
                                         UNITED STATES MAGISTRATE JUDGE